## William D. Jack *v.* Elmer E. Kintz and Susan Brubaker, Appellants.

177    571
j 19 SC ³326
177    571
f 210    ¹ 73

*Married woman—Contest with husband's creditors—Presumption—Burden of proof—Evidence—Acts of June 3, 1887, and June 8, 1893.*

The acts of June 3, 1887, P. L. 332, and June 8, 1893, P. L. 344, enlarge the capacity of a married woman to contract and to acquire and dispose of property, but they do not remove the burden which rests on her of proving title to the property she claims against her husband's creditors; and where the conveyance to her is from her parents she must, in a contest with her husband's creditors, prove that she paid for it with her own money, or that it was a gift to her.

*Evidence—Competency of witnesses—Act of April 22, 1887, sec. 5—Husband and wife.*

In an action of ejectment it appeared that a married woman took a conveyance of the land from her parents and subsequently conveyed it to defendant by a deed in which her husband joined. Plaintiff claimed title under mesne conveyances from a purchaser at a sheriff's sale at which the land had been sold as the property of the husband. It appeared that the person who had devised the property to the plaintiff's vendor was dead. *Held*, (1) that there was nothing in the act of April 23, 1887, sec. 5, P. L. 332, which rendered the husband an incompetent witness to prove that the property had been paid for by his wife's money.

*Husband and wife—Evidence—Ejectment.*

In an action of ejectment where the property is claimed by a sheriff's vendee as the property of a husband, a deed from the husband and wife to the defendant is inadmissible unless accompanied with evidence that the property was bought with the wife's money, there being actual notice to the vendee of the husband's equity.

Argued April 30, 1896. Appeal, No. 282, Jan. T., 1896, by defendants, from judgment of C. P. Cumberland Co., Feb. T., 1894, No. 172, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Ejectment for a lot of land in New Cumberland. Before STEWART, P. J., of the 39th judicial district, specially presiding.

At the trial it appeared that both parties derived title through Milton K. Brubaker. On January 4, 1888, Brubaker and wife conveyed the property to their daughter, Minnie M. Albright, wife of J. R. Albright, the consideration named being $6,500. On March 24, 1888, Minnie and J. R. Albright conveyed the land to Susan Brubaker, one of the defendants.

The plaintiff contended that, notwithstanding the fact that in the deed from Milton K. Brubaker Mrs. Minnie M. Albright is named as the grantee, the property was her husband's, and as such liable to seizure for his debts. At the suit of a creditor of the husband, a judgment was obtained March 2, 1888, the land levied upon as the property of the husband, and sold by the sheriff February 8, 1889, to S. M. Leidich, who obtained the sheriff's deed February 18, 1889. Leidich in turn conveyed to Catharine A. Fleming, who devised the premises to Annie K. Fleming, who, by deed dated December 19, 1892, conveyed the same to W. D. Jack, the plaintiff. This debt of J. R. Albright was in existence at the time of the conveyance to his wife.

Defendants offered deed of Minnie M. Albright and her husband, John R. Albright, to Susan Brubaker, dated March 24, 1888.

It was objected to (1) because no title has been shown in Mrs. Minnie M. Albright; (2) the deed was not recorded until the year 1892, long after the sheriff's sale.

By the Court: Without a purpose to connect it with other evidence to be offered it would be irrelevant and immaterial. The objections are sustained, evidence excluded, bill sealed. [5]

Defendants proposed to prove by J. R. Albright, that in the summer of 1886 he and Miss Minnie M. Brubaker both resided in the lower end of Cumberland county, she being a single young lady and he being a single man; that he began paying attentions to this young lady during that summer at her father's house a number of times; that the parents objecting, the daughter, Miss Brubaker, was sent to attend school at the Female College at Annville, Pa.; that Mr. Albright pursued his courtship by meeting her down at the college and at Lebanon; that the courtship lasted during that fall and up until the 14th of January, 1887, and on that day he had a conversation with her, on the subject of marrying him, for about three hours; that he offered her all the inducements he could, among others a little farm which he had in East Pennsboro township: that she declined the little farm and all the inducements he held out to her, and as he was about to leave he said to her, "Now, Minnie, I will tell you what I will do. I will give you $5,000 in money if you will marry me, and it is now or never. Make up your mind and let me know;" that she then or immediately subsequent to that said to him, "If you will do that, I will marry you." He then arranged to meet her on the 20th of January, 1887, when they went to Camden and were married in consequence of this agreement of his to pay her this money; that he subsequently paid her moneys amounting to over $5,000, at first in small sums, she importuning him from time to time to pay her the $5,000; that he tried to get her to take the little farm, as he had tried to do before marriage; that she refused, and that then he sold the little farm in September, 1887, and in December, 1887, gave her $1,500 in cash, and on the 4th of January, 1888, he and his wife and Mr. Brubaker and Mrs. Brubaker came to Carlisle to their counsel, Judge Herman,

and there he furnished her $3,000 more in cash, which, with the $1,500, was paid as part of the purchase money of the property now in dispute, and that $2,000 of the purchase money being unpaid, was reserved and fixed as a lien on the property. That at the time he made this engagement he owned two farms, a large one and small one; that he sold those farms, and they were more than sufficient to pay every dollar of debt he owed; that he did not then believe that he had a creditor in the world; that he denied owing the note, and denies now that he ever owed a dollar on the note of Annie Fleming; that judgment was obtained on that note in his absence, and when he was sick, and that there was no consideration for it; that he sold these farms in the fall of 1887, and upon the payment of the purchase money satisfied every debt and lien against him in the world; this for the purpose of showing a valid consideration for the conveyance, and rebutting all presumptions of fraud.

It was objected to, that Catharine Fleming, the devisor of Annie Fleming, who is the grantor of Mr. Jack, the plaintiff in this case, being dead, he is incompetent as a witness.

By the Court: The competency of this witness does not alone depend on whether he is or is not a party to the contract or thing in action. It is enough to know that his wife is claiming adversely to a party on the record whose title is derived through a deceased grantor. She herself would be incompetent to testify. It follows that he is incompetent. The objection is sustained, the evidence is excluded, bill sealed. [6]

The court charged in part as follows:

[When the conveyance was made to Minnie M. Albright by Brubaker, who was admittedly the owner of the premises, the grantee in the deed was a married woman, the wife of J. R. Albright. The consideration in the deed was $6,500. In the absence of all evidence to the contrary the law presumes that this consideration money was derived from the husband. The plaintiff may securely rest on this presumption until it is overcome by evidence going to show that the money was the wife's. In the present case the plaintiff has gone further, and has offered evidence that shows that at this very time the husband was insolvent, and that such application of his money to the pur-

chase of property in the name of his wife would, if allowed to remain for her benefit, be a fraud upon his creditors.

Apart from this consideration, however, the mere fact that the grantee, Mrs. Albright, was a married woman at the time of the conveyance to her, is sufficient for the purposes of the plaintiff. When the plaintiff showed this, the law cast upon those claiming title through the wife, the defendants here, the burden of showing that the property was purchased with her own means.] [4] This burden they have failed to meet. No evidence whatever has been offered to overcome the presumption that it was the husband's money that purchased the property, and so I instruct you to find a verdict for the plaintiff for the land described in the writ.

Defendants' point and answer, among others, were

1. The evidence in the case shows that the purchase of the property in dispute was made by Mrs. Albright on the 4th of January, 1888, for $6,500, $4,500 of which was paid and $2,000 of which was reserved and secured by a lien fixed in the title, and there being no evidence that this was not her money, or that there was any fraud in the transaction, since the act of 1887, it does not devolve upon her to show where she obtained the money, and the verdict should be for the defendants. *Answer :* Refused. [2]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1, 3) directing verdict for plaintiff instead of for defendants ; (2, 4) above instructions, quoting them ; (5, 6) rulings on evidence, quoting the bill of exceptions.

*F. E. Beltzhoover*, with him *G. Wilson Swartz*, for appellants. —The decisions of this court on the act of 1887, which was repealed and its purpose enlarged very greatly by the act of 1893, all tend to the support of the appellants' contention : Campe v. Horn, 158 Pa. 512 ; Steffen v. Smith, 159 Pa. 210 ; Gockley v. Miller, 162 Pa. 274 ; Nuding v. Urich, 169 Pa. 293 ; In re Albrecht, 136 N. Y. 96.

Where real estate is conveyed by a father to a child the legal presumption is that it is intended to be an advancement : Dutch's App., 57 Pa. 461 ; Lewis' App., 127 Pa. 127 ; Phillips v. Gregg, 10 Watts, 158.

The attention of the learned court was unfortunately not directed to the fact that Duffield v. Hue, 129 Pa. 94, was over-ruled in Dickson v. M'Graw, 151 Pa. 98, and the law as settled in the latter case has been consistently followed ever since: Tarr v. Robinson, 158 Pa. 64. In Spotts' Est., 156 Pa. 281, it was held that where a husband has borrowed money on a bond with a surety and has loaned the money thus borrowed to his wife, the surety is a competent witness against the wife's estate, after her death, to establish the husband's claim. Before the act of 1869 both interest and policy excluded both husband and wife from testifying for or against each other: Taylor v. Kelly, 80 Pa. 97; Smith v. Hay, 152 Pa. 383; Bitner v. Boone, 128 Pa. 567.

*W. F. Sadler*, with him *S. M. Leidich*, for appellee.—A married woman may now contract to purchase real estate on credit and render herself personally liable: Steffen v. Smith, 159 Pa. 210; Campe v. Horne, 158 Pa. 508; Adams v. Gray, 154 Pa. 258; Nuding v. Urich, 169 Pa. 293. There has been no change in or relaxation of the rule laid down in Gamber v. Gamber, 18 Pa. 363; Keeney v. Good, 21 Pa. 355; Walker v. Reamy, 36 Pa. 410; Baringer v. Stiver, 49 Pa. 129, and kindred cases from that down until Bollinger v. Gallager, 170 Pa. 91, 92, when it is reiterated and emphasized.

The declaration in Karns v. Tanner, 66 Pa. 305, in construing the act of 1869 by Justice AGNEW that the object of the proviso in that statute was "to prevent inequality," has been frequently approved by this court and has also been adopted by it in construing the act of 1887: Tarr v. Robinson, 158 Pa. 64; Spotts' Est., 156 Pa. 281; Smith v. Hay, 152 Pa. 377; Gerz v. Weber, 151 Pa. 396; Dixon v. McGraw, 151 Pa. 98. The appellants' attorneys have assumed that the learned court below based his ruling on Duffield v. Hue, 129 Pa. 94, and insists that this case has been overruled in Dixon v. McGraw, supra, and other cases. There is nothing in the rulings of the court below, on offers of evidence nor in the charge to justify the statement that it was controlled by the case referred to, nor is it material, if his conclusion was correct, what led to it. The cases of Parry v. Parry, 130 Pa. 94, and Sutherland v. Ross, 140 Pa. 379, are more analogous to the case at bar. That Albright was incompetent if

his wife was, was settled in Bitner v. Boone, 128 Pa. 567, and reaffirmed in Sutherland v. Ross, 140 Pa. 379.

When the conveyance of the property was made to Mrs. Albright she was a married woman. The law presumes the payment to have been made by the husband; upon her was the burden of showing its payment "by evidence that did not admit of a reasonable doubt:" Gamber v. Gamber, 18 Pa. 366; Baringer v. Stiver, 49 Pa. 131.

*F. E. Beltzhoover,* with him *G. Wilson Swartz,* for appellants, in reply.—Almost any bona fide and reasonable agreement made before marriage to secure the wife either in the enjoyment of her own property or of a portion of that of her husband will be carried into effect: Endlich on Married Women, 198; 2 Kent's Com. 163; English v. Foxhall, 2 Pet. 595; Hunter v. Bryant, 2 Wheat. 32; Tarbell v. Tarbell, 10 Allen, 278; Smith v. Chaf-ell, 31 Conn. 589; Frank's App., 59 Pa. 190; Magniac v. Thompson, 7 Peters, 349; Lant's App., 95 Pa. 279.

In the case of Earl v. Champion, 65 Pa. 191, which is exactly the case at bar, the identical question is decided.

A parol marriage settlement of personalty is not ipso facto void: Gackenbach v. Brouse, 4 W. & S. 546; Magniac v. Thompson, 1 Bald. 344; Larkin v. McMullin, 13 Wright, 29.

OPINION BY MR. JUSTICE McCOLLUM, October 5, 1896: ..

There are but two questions involved in this appeal. The first is whether a married woman who receives a conveyance of land is required in a contest with her husband's creditors respecting the possession and ownership of it to prove that she paid for it with her own money, or that it was a gift to her from her grantors. In the case before us the defendants claim to have a good title to the land in dispute by virtue of the deed of it from John R. Albright and Minnie M. Albright to Susan Brubaker, and the plaintiff claims to have a like title to it based on a judicial sale of it as the property of John R. Albright. It appears to be conceded that Milton K. Brubaker was the owner of the property on the 4th of January, 1888, and that he and his wife, Susan Brubaker, on that day made and delivered a deed of it to their married daughter Minnie M. Albright, who on the 24th of March, 1888, united with her husband in a con-

veyance of it to her mother. The consideration named in each deed was $6,500 and each was subject to the payment of $2,000 of that sum to Milton K. Brubaker on or before the 15th of April, 1889. After the deed was made to Minnie M. Albright, and before the deed was made to Susan Brubaker, Annie K. Fleming obtained a judgment against John R. Albright for $7,889 and on this judgment an execution was issued by virtue of which the land in dispute was seized and sold by the sheriff. If John R. Albright owned the land when the judgment was obtained, his title to it was divested by the sale and the plaintiff is the present owner of it. In other words the plaintiff has whatever title Albright acquired by the deed from the Brubakers to his wife.

It is a familiar and well settled principle that in a contest between a married woman and the creditors of her husband concerning the ownership of property which she claims to have purchased during coverture she must "prove distinctly that she paid for it with funds which were not furnished by her husband:" Gamber v. Gamber, 18 Pa. 363. This principle or rule "applies to purchasers of real estate as well as personal:" Keeney v. Good, 21 Pa. 349; Walker v. Reamy, 36 Pa. 410; Baringer v. Stiver, 49 Pa. 129. The rule thus established has been upheld in a long line of cases and distinctly recognized and enforced in the recent case of Bollinger v. Gallagher et al., 170 Pa. 84. As it appears from the circumstances connected with and surrounding the transaction in question, and apart from the Fleming judgment, that the grantee had actual notice of the husband's equity, we cannot say that the learned court below erred in holding that in the absence of evidence that the property was purchased by Minnie Albright with her own means the plaintiff was entitled to recover. We do not think that the rule we have considered is in any degree affected by the act of June 3, 1887, or by the act of 1893. These acts enlarge the capacity of a married woman to contract, and to acquire and dispose of property, but they do not remove the burden which rests on her of proving title to the property she claims against her husband's creditors.

The remaining question is whether the learned court below erred in rejecting the offer contained in the sixth specification. It was an offer to prove by John R. Albright that his wife,

Minnie M. Albright, paid for the property with her own money. The only objection to it was that the person by whom it was proposed to prove it was not a competent witness. If there was any warrant for the objection it must be found in clause " e " of section 5 of the act of April 23, 1887. We are unable to find anything in the record, in the evidence submitted, or in the offers of evidence made on the trial, which brings John R. Albright within any of the excluding clauses of section 5. He is not " a surviving or remaining party to the thing or contract in action," or to the suit, and he has no interest adverse to any right of the deceased party who was at most, according to the record, an intervening purchaser who devised the property to the plaintiff's vendor. The suggestion that if Minnie M. Albright was the owner of the property her husband has an estate by the curtesy in it which he is interested in maintaining, over looks the fact that whatever title he had in it passed to her mother by the deed in which he joined.

We think that John R. Albright was a competent witness as to all relevant matters, and that the conclusion we have reached in respect to his competency is in accord with the decisions of this court, among which we may mention Brown v. Carey, 149 Pa. 134; Dixson v. McGraw, 151 Pa. 98; Gerz v. Weber, 151 Pa. 396; Smith v. Hay, 152 Pa. 377; Tarr v. Robinson, 158 Pa. 64, and Smith v. Rishal, 164 Pa. 181.

We cannot say that, in the absence of evidence showing or tending to show the purchase of the property by Minnie M. Albright with her own means, it was error to reject the offer of her deed to her mother. We sustain the sixth specification and overrule the first, second, third, fourth and fifth.

Judgment reversed and venire facias de novo awarded.